1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  RENÉ A. CHACÓN, State Bar No. 119624
   Supervising Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5957
    Fax:  (415) 703-1234
8   Email:  rene.chacon@doj.ca.gov

9  Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

**JOSE ANTONIO HERNANDEZ,**

Petitioner,

v.

**JAMES E. TILTON, Director of Corrections,**

Respondent.

No. C 07-3778 MMC (PR)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**

EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
RENÉ A. CHACÓN, State Bar No. 119624
Supervising Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 703-5957
  Fax:  (415) 703-1234
  Email:  rene.chacon@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **JOSE ANTONIO HERNANDEZ,**<br><br>                                  Petitioner,<br><br>     v.<br><br>**JAMES E. TILTON, Director of Corrections,**<br><br>                                  Respondent. | No. C 07-3778 MMC (PR)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER** |

## INTRODUCTION

Petitioner, Jose Antonio Hernandez, is presently serving a 30 years to life, plus 13-year sentence for convictions of attempted murder of a public official with use of a firearm, Cal. Penal Code §§ 217.1(b), 12022.53(b), aggravated assault on a peace officer with use of a firearm, Cal. Penal Code §§ 245(d)(1), 12022.53(b), exhibiting a deadly weapon to resist arrest, Cal. Penal Code § 417.8, and being a felon in the possession of a firearm for the benefit of a criminal street gang, Cal. Penal Code §§ 12021(a)(1), 186.22(b)(1). On July 23, 2007, petitioner filed the instant petition for writ of habeas corpus under 28 U.S.C. § 2254. On November 15, 2007, the Court issued the Order to Show Cause. *See* Order to Show Cause.

**STATEMENT OF THE CASE**

By amended information the Monterey County District Attorney charged petitioner with one count of attempted, deliberate, premeditated murder, Cal. Penal Code §§ 664, 187(a), with use of a firearm, Cal. Penal Code § 12022.53(b); one count of attempted murder of a public official to retaliate for or prevent the performance of that official's duties, Cal. Penal Code § 217.1(b), with use of a firearm, Cal. Penal Code § 12022.53(b); one count of aggravated assault on a peace officer, Cal. Penal Code § 245(d)(1), with use of a firearm, Cal. Penal Code § 12022.53(b); one count of exhibiting a deadly weapon to resist arrest, Cal. Penal Code § 417.8; two counts of being a felon in the possession of a firearm, Cal. Penal Code § 12021(a)(1), for the benefit of a criminal street gang, Cal. Penal Code § 186.22(b)(1); two counts of street terrorism, Cal. Penal Code § 186.22(a); and two counts of second-degree robbery, Cal. Penal Code § 211, with use of a firearm, Cal. Penal Code § 12022.53(b), and for the benefit of a criminal street gang, Cal. Penal Code § 186.22(b)(1). *See* Respondent's Exhibit A at 139-41 (Clerk's Transcript hereinafter referred to as "CT").  The information alleged one prior strike, Cal. Penal Code § 1170.12(c)(1), and three prior prison term commitments, Cal. Penal Code § 667.5(b).  CT at 139-41.

On August 23, 2005, trial by jury commenced. CT at 129. On August 29, 2005, petitioner admitted the truth of the alleged priors. CT at 151-52. On August 30, 2005, the jury found petitioner guilty of one count of attempted murder with use of a firearm, one count of attempted murder of a public official with use of a firearm, one count of aggravated assault on a peace officer with use of a firearm, one count of exhibiting a deadly weapon to resist arrest, and one count of being a felon in the possession of a firearm. CT at 159, 161-66. The jury found the attempted murder was not premeditated and acquitted petitioner on the remaining counts. CT at 159, 167-73.

On October 27, 2005, the trial court imposed a prison sentence of 30 years to life, plus 13 years. CT at 247-49, 254-55.

On January 29, 2007, the California Court of Appeal found the count one attempted murder was a necessarily included offense of count two and vacated count one. As modified, the judgment was otherwise affirmed. *See* Respondent's Exhibit B.

On April 11, 2007, the California Supreme Court denied the petition for review. *See*

Memo. of P&A's In Support of Answer - No. C 07-3778 MMC (PR)

Respondent's Exhibit C.

On July 23, 2007, petitioner filed the instant petition for writ of habeas corpus under 28 U.S.C. § 2254. On November 15, 2007, the Court issued the Order to Show Cause. *See* Order to Show Cause.

## LEGAL STANDARDS

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes a "highly deferential" standard for evaluating state court rulings and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Under AEDPA, the federal court has no authority to grant habeas corpus relief unless the state court's ruling was "contrary to, or involved an unreasonable application of," clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). A decision constitutes an unreasonable application of Supreme Court law if the state court's application of law to the facts is not merely erroneous, but "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Thus, "[o]nly if the evidence is 'too powerful to conclude anything but' the contrary" should the court grant relief. *Edwards v. Lamarque*, 476 F.3d 1121, 1126 (9th Cir. 2007) (en banc). The petitioner bears the burden of showing that the state court's decision was unreasonable. *Visciotti*, 537 U.S. at 25.

## STATEMENT OF FACTS

Monterey County District Attorney investigator David Narum monitored jail recordings and noted calls made to a phone number at a residence in King City, California. *See* Respondent's Exhibit D at 290 (Reporter's Transcript of Trial hereinafter referred to as "RT"). The residence was 404 North Vanderhurst. RT at 290. At the residence, Narum contacted and spoke with petitioner. RT at 291-92. Narum discovered that petitioner was a wanted parolee from Imperial County. RT at 293. Narum contacted parole agent Davis to report petitioner's fugitive status and current residence. RT at 296.

**Testimony By Agent Davis**

On November 30, 2004, Department of Corrections parole agent Terry Davis received a phone call from investigator David Narum. RT at 93. Narum reported that petitioner, a parolee

from Southern California, was in the King City area. RT at 94. Davis reviewed records and confirmed petitioner's fugitive status, consulted his superior, and decided to travel to King City to locate petitioner and arrest him. RT at 94-95. Agent Davis was joined by two other parole agents, and the group traveled to the King City police department to seek assistance. RT at 97-98.

While awaiting the King City police, the parole agents traveled to the suspected residence to check the general area and to see if petitioner was visible. RT at 102. At the corner of Collins and Vanderhurst, agent Davis saw a small white car parked facing down Collins Street. RT at 103. Petitioner stood next to the driver's side of the parked car. RT at 104. The agents drove northbound through the street then turned around. RT at 105. Agents Bottorff and Jimenez stated they were "100 percent" certain that it was petitioner. RT at 105-06. They decided to attempt to arrest petitioner without police assistance. RT at 106.

Agent Davis parked his vehicle in front of the suspected residence. Petitioner did not move. RT at 107. The three agents got out of the car and approached petitioner. Agent Davis asked petitioner for directions. RT at 107. Petitioner stopped his conversation and approached the agents. RT at 108. As petitioner began to direct the agents with his left hand, agent Davis announced, "'state parole, you're under arrest.'" RT at 109. Agent Davis reached for petitioner's right hand. RT at 110. Petitioner reacted by spinning away from agent Davis. RT at 111. Agent Davis grabbed petitioner by the waist and took him to the ground. RT at 111. Petitioner was trying to run. RT at 112. To prevent petitioner from breaking away, agent Davis grabbed his ankle and pulled it to keep petitioner on the ground. RT at 113. Agent Jimenez tried to grab petitioner's head. RT at 113. Petitioner continued to struggle. RT at 114.

As the group "jostled around" with petitioner, agent Jimenez said, "'He's got a gun to my head, spray him.'" RT at 115. Agent Davis next heard a spray can being activated and grabbed the spray can when it fell to the ground. RT at 116. Petitioner began to scream. RT at 116. Agent Jimenez repeated that petitioner had pointed a gun to his head. RT at 116. Agent Davis later took possession of a .38 revolver. RT at 117. Agent Davis got off petitioner when petitioner's arms were handcuffed behind his back. RT at 118. A search of petitioner revealed a brown-colored holster, black gloves and a ski mask. RT at 119. A search of the bedroom petitioner said he slept in

1 revealed cards, letters, papers with gang indicia, and an automatic weapons manual. RT at 120-21.

**Testimony By Agent Bottorff**

Parole agent Donald Bottorff identified petitioner from the tattoo on the right side of his neck. RT at 151. When agent Bottorff was within "a couple of feet" of petitioner, agent Bottorff said, "'Parole agents, you're under arrest.'" RT at 153. Agent Bottorff grabbed petitioner's left hand and elbow to put behind his back in a control hold. RT at 154. Petitioner stated, "'You're not taking me,'" and struggled to free himself. RT at 154. "Somehow," the agents and petitioner "crashed to the ground." RT at 154. Petitioner kicked to his feet before the agents managed to put him to the ground again. RT at 154. Petitioner was "fighting hard to get free." RT at 155. Agent Jimenez said, "'Spray him.'" RT at 155. Agent Bottorff sprayed petitioner's face a couple of times after warning him that he would be sprayed if he continued to resist. RT at 155-56.

Following the second spray to petitioner's face, agent Bottorff heard a scream at the bottom of the pile. RT at 155. Agent Bottorff did not lose hold of petitioner's left hand during the struggle. RT at 156. Agent Bottorff saw petitioner's right hand come out from the ground holding a "pistol." RT at 157. Agent Bottorff yelled out that petitioner had a gun and reached over to pin petitioner's right hand to the ground. RT at 158. Agent Bottorff hit petitioner's right hand against the ground in an attempt to dislodge the gun. RT at 158. Petitioner eventually released the gun. RT at 159. Agent Bottorff retrieved the gun and handed it to agent Jimenez. RT at 159. Petitioner then ceased resisting and was brought under control. RT at 159.

**Testimony By Agent Jimenez**

As he approached, parole agent Ben Jimenez called petitioner "Jose," causing petitioner to hesitate, and look over at agent Jimenez. RT at 188. Agent Jimenez believed petitioner was about to run from the approaching agents. RT at 188-89. Simultaneously, agent Davis said, "'State parole, you're under arrest.'" RT at 189. Petitioner started to run to the left side when agent Bottorff grabbed his left arm. RT at 190. Agent Jimenez grabbed around petitioner's neck then pulled back on his neck as petitioner continued to resist. RT at 190. The group fell down with agent Jimenez on his back and petitioner on top of Jimenez. RT at 190-91. Agent Jimenez instructed the agents to spray petitioner because he continued to resist. RT at 192-93. After petitioner was sprayed with

Memo. of P&A's In Support of Answer - No. C 07-3778 MMC (PR)

5

mace, petitioner said, "fuck it, you ain't gonna take me, you won't take me." RT at 191-92. Agent Jimenez saw petitioner's right arm "come out with a weapon." RT at 193. Petitioner's hand was "in a shooting grip" when he came up with a gun. RT at 194. Agent Jimenez yelled out, "'gun.'" RT at 193. Agent Jimenez used his left hand to "take the gun off the line." RT at 194. Agent Jimenez was trying to keep the muzzle from pointing at his head. RT at 194. However, "[e]ach time [agent Jimenez] tried to push off, he tried to place the gun on my head. On a couple times, at one point the gun finally hit my head and I pushed off again. At that point, it was if I didn't get up I was gonna die right there." RT at 194. Agent Jimenez said that petitioner tried "four to five" times to aim the gun at Jimenez's head. RT at 195, 205. At one point, agent Jimenez felt the muzzle touch his head. RT at 195. Agent Jimenez determined that he was going to get up on his feet and pushed himself up with both his hands. RT at 195. As agent Jimenez got to his feet, he came around and saw the revolver on the ground. RT at 195-96. Agent Jimenez grabbed the revolver and determined that it was loaded. RT at 196. Agent Jimenez next assisted agent Bottorff in cuffing petitioner. RT at 196. Agent Jimenez later gave the gun to agent Davis. RT at 196.

King City police officer John Peters responded to the scene and took possession of the gun taken from petitioner's person. RT at 180. Officer Peters unloaded the weapon and secured the live ammunition. RT at 181. Officer Peters also took possession of the items seized from a search of petitioner's bedroom. RT at 182-83.

**Testimony By Gang Expert**

King City police officer Mark Baker testified that King City is "mainly a Sureno town." RT at 359. One predicate crime arose when Sureno gang member Antonio Pastrano pleaded guilty to two counts of attempted murder of two Norteno gang members. RT at 359-60. Another offense arose when Sureno gang member Antonio Muniz pleaded guilty to dissuading a witness. RT at 361-62. In 2001, Sureno gang member Celestino Magana pleaded guilty to aggravated assault with a beer bottle. RT at 364-65. In 2001, Sureno gang member Juan Mosqueda pleaded guilty to aggravated assault with a knife. RT at 366-67. Officer Baker examined photos depicting petitioner's tattoos and determined that they referred to the Sureno gang and showed his alliance with that gang. RT at 368-73. Officer Baker listened to various jailhouse recordings of telephone

calls. RT at 373-74. In one call, petitioner reported that he wished to be housed in the same pod that housed Surenos. RT at 374. In other calls, petitioner discussed other gang business. RT at 374-83. The evidence seized from petitioner's bedroom included items referring to the Sureno gang. RT at 383-89. Officer Baker opined that petitioner was an active Sureno gang member. RT at 391, 433. Officer Baker opined that petitioner committed the underlying offenses for the benefit of the Sureno criminal street gang. RT at 434.

## ARGUMENT

## SUFFICIENT EVIDENCE SUPPORTS COUNT TWO

Petitioner contends the evidence was insufficient to prove count two beyond a reasonable doubt—"the proof of both an attempt and an intent to kill was lacking. [Petitioner] did no more than repeatedly point a gun at Jimenez. There was no evidence of a direct act by [petitioner] that would have caused his death had it not been avoided by extraneous circumstances, nor of any act demonstrating a specific intent to kill Jimenez. [Petitioner] did not cock the gun, he did not attempt to pull the trigger, and he did not fire the gun. He never threatened to kill Jimenez or anyone, and expressed only a desire to get away." *See* Petn. at 7-8.[1] The record demonstrates sufficient evidence.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime for which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, which if proven, entitles him to federal habeas relief. *Jackson v. Virginia*, 443 U.S. 307, 321, 324 (1979). A federal court reviewing collaterally a state court conviction does not determine whether the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992), *cert*

---

1. Petitioner's heading argues that evidence was insufficient with respect to counts one and two. *See* Petn. at 7. It appears petitioner has borrowed briefing from the direct appeal. The California Court of Appeal found count one was a lesser necessarily included offense of attempted murder of a peace officer, count two. The Court of Appeal vacated count one. *See* Respondent's Exhibit B at 13.

Memo. of P&A's In Support of Answer - No. C 07-3778 MMC (PR)

7

*denied*, 510 U.S. 843 (1993). The federal court determines only whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof beyond a reasonable doubt, may the writ be granted. *Jackson*, 443 U.S. at 324.

On habeas review, a federal court evaluating the evidence under *In re Winship* and *Jackson v. Virginia* should take into consideration all of the evidence presented at trial. *LaMere v. Slaughter*, 458 F.3d 878, 882 (9th Cir. 2006). Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995). If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear on the record–that the trier of fact resolved such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004). Further, under AEDPA, the question is whether the state court's application of the *Jackson* standard was objectively unreasonable. *Juan H. v. Allen*, 408 F.3d 1262, 1274-1275 (9th Cir. 2005).

California Penal Code § 217.1(b) prohibits "attempts to commit murder against any [peace officer] . . . in retaliation for or to prevent the performance of the victim's official duties . . . ."

Petitioner contends that the record lacks proof of an attempt, and of an intent to kill. Here, the record shows that petitioner did more than repeatedly point a gun at Jimenez. Petitioner, an active Sureno gang member, was a fugitive from parole who armed himself with a loaded firearm on King City's streets. After the parole officers identified themselves and announced they were placing petitioner under arrest, petitioner attempted to flee. RT at 190. Petitioner resisted arrest when the parole officers grabbed him to affect an arrest. RT at 109-14, 153-55, 190. Petitioner then fell onto agent Jimenez, who landed on his back facing petitioner. RT at 190-91. Petitioner continued to resist even when the agents sprayed him with pepper spray. RT at 155-56, 191-92. Petitioner said, "fuck it, you ain't gonna take me, you won't take me." RT at 193, 154. Next, petitioner's right arm came out "with a weapon." RT at 193. Agent Jimenez saw petitioner's hand

was "in a shooting grip"—by reasonable inference meaning his finger was on the trigger. RT at 194. Agent Jimenez continuously pushed the gun away from his head. RT at 194. Agent Jimenez said that petitioner tried "four to five" times to directly aim the gun at Jimenez's head. RT at 195, 205. At one point, agent Jimenez felt the muzzle touch his head. RT at 195. At that point, agent Jimenez had to get to his feet or risk dying at petitioner's hand. RT at 194-95. Agent Jimenez managed to extricate himself, then retrieved petitioner's gun after agent Bottorff had forcibly dislodged it from petitioner's hand. RT at 158-59, 195-96. Agent Jimenez later determined that petitioner's gun was indeed loaded with live ammunition. RT at 196, 181.

Petitioner's intent to kill agent Jimenez is demonstrated by the following: petitioner was a fugitive parolee and an active Sureno gang member. He armed himself with a firearm containing live ammunition. He stated, "fuck it, you ain't gonna take me, you won't take me." He struggled to free himself from the parole agents. He took out his firearm from its holster, put his finger on the trigger, and aimed the muzzle at agent Jimenez's head. Petitioner then proceeded to repeatedly aim the muzzle at agent Jimenez's head. At one point the gun touched Jimenez's head, after agent Jimenez had fought to push the muzzle away four to five separate times. On these facts, the jury reasonably rejected petitioner's defense that no intent to kill was shown because no shots were ever fired and petitioner was just trying to throw his gun away. *See* RT at 543-44. The record supports the jury's contrary finding that petitioner tried to use his firearm to kill agent Jimenez and that he possessed the requisite intent to kill.

The California Court of Appeal considered the trial record and determined that the record supported count two, finding as follows:

> We find substantial evidence in this case to support the jury's finding that defendant committed attempted murder of a peace officer. The evidence shows that defendant committed more than an assault on Jimenez, a parole officer, with a deadly weapon. Defendant had a loaded gun in his pocket when he struggled with three parole officers in an attempt to flee. However, the officers took defendant to the ground, and defendant landed on top of Jimenez while the other two officers were on top of him. At that point, defendant said "you won't take me," pulled out the gun from his pocket, held it in "a shooting grip," and attempted to place it at Jimenez's head. Four or five times, Jimenez pushed the gun away but defendant pushed it back and, once, the gun actually touched Jimenez's head. Jimenez testified that each time he pushed the gun away, defendant had the opportunity to drop the gun, but did not do so until Bottorff forced him to. This is sufficient evidence from which a rational trier of fact could find that defendant intended to kill Jimenez and committed a direct but ineffectual act toward accomplishing the

intended killing. ([*People v.*] *Moore, supra,* 96 Cal.App.4th [1105,] 1112 [(2002)].)

Defendant contends that the mere pointing of a gun, without an attempt to fire it, is insufficient to support the conviction. He notes that Jimenez testified that defendant could have pulled the trigger at any time, but did not do so. Defendant cites *People v. Lenart* (2004) 32 Cal.4th 1107 (*Lenart*) in support of his claim. In *Lenart*, the defendant, who had already killed a bartender, pointed a gun at a woman who unexpectedly entered the bar and ordered the woman onto the floor. The woman grabbed hold of the defendant's gun. The woman testified that the defendant kept trying to point the gun at her and in their struggle it fired. The defendant then withdrew one hand from the gun in order to put the woman in a choke hold. When the woman, still holding the gun, twisted free and fled, the defendant followed her. (*Id.* at p. 1126.) The Supreme Court found this evidence sufficient to support an attempted murder conviction. "Had defendant intended merely to incapacitate or delay [the woman] long enough to make his escape, he could have fled when she gained control of his revolver, but instead he followed her outside onto the sidewalk. His pursuit of [the woman] supports the finding that defendant intended to kill her. Moreover, the jury could reasonably have found that defendant's earlier acts-either his ordering [the woman] at gunpoint to the floor or his attempt to turn the revolver's barrel at her as they struggled-were consistent with that intent." (*Ibid.*)

In this case, had defendant merely intended to incapacitate Officer Jimenez, he could have hit Jimenez with the gun or even shot him in his arm or leg. Instead, defendant repeatedly attempted to point the gun at Jimenez's head. His repeated attempts to point the gun at Jimenez's head without firing a shot, which would most certainly cause a fatal wound, supports the finding that defendant intended to kill Jimenez. Moreover, the jury could reasonably have found that defendant's statement, "you won't take me," and his failure to drop the gun when he had several opportunities to do so was consistent with that intent. That the circumstances might also support a contrary finding does not warrant reversal of the judgment. ([*People v.*]*Thomas, supra,* 2 Cal.4th [489,] 514 [(1992)].)

Respondent's Exhibit B at 10-12.

The record shows that there was sufficient evidence from which a rational jury could have concluded beyond a reasonable doubt that petitioner attempted to murder a peace officer. Thus, the state courts' denial of the claim was not contrary to, or an unreasonable application of *Jackson v. Virginia*, 433 U.S. 307, nor was it objectively unreasonable in light of the totality of the evidence presented.

## CONCLUSION

Accordingly, respondent respectfully requests that the Court deny the petition for writ of habeas corpus.

1 | Dated: February 13, 2008

2 | Respectfully submitted,

3 | EDMUND G. BROWN JR.
Attorney General of the State of California

4 | DANE R. GILLETTE
Chief Assistant Attorney General

5 | GERALD A. ENGLER
Senior Assistant Attorney General

6 |

7 | PEGGY S. RUFFRA
Supervising Deputy Attorney General

8 |

9 |

10 | /s/ René A. Chacón
RENÉ A. CHACÓN
Supervising Deputy Attorney General

11 | Attorneys for Respondent

RAC:eaw
40215991.wpd
SF2007403126

Memo. of P&A's In Support of Answer - No. C 07-3778 MMC (PR)

**TABLE OF CONTENTS**

| | Page |
|---|---|
| INTRODUCTION | 1 |
| STATEMENT OF THE CASE | 2 |
| LEGAL STANDARDS | 3 |
| STATEMENT OF FACTS | 3 |
|     Testimony By Agent Davis | 3 |
|     Testimony By Agent Bottorff | 5 |
|     Testimony By Agent Jimenez | 5 |
|     Testimony By Gang Expert | 6 |
| ARGUMENT | 7 |
|     **SUFFICIENT EVIDENCE SUPPORTS COUNT TWO** | 7 |
| CONCLUSION | 10 |

**TABLE OF AUTHORITIES**

                                                                                                                     **Page**

**Cases**

*Bruce v. Terhune*
376 F.3d 950 (9th Cir. 2004) ..... 8

*Edwards v. Lamarque*
476 F.3d 1121 (9th Cir. 2007) (en banc) ..... 3

*In re Winship*
397 U.S. 358 (1970) ..... 7, 8

*Jackson v. Virginia*
443 U.S. 307 (1979) ..... 7, 8, 10

*Juan H. v. Allen*
408 F.3d 1262 (9th Cir. 2005) ..... 8

*LaMere v. Slaughter*
458 F.3d 878 (9th Cir. 2006) ..... 8

*Lockyer v. Andrade*
538 U.S. 63 (2003) ..... 3

*Payne v. Borg*
982 F.2d 335 (9th Cir. 1992)
cert denied 510 U.S. 843 (1993) ..... 8

*Walters v. Maass*
45 F.3d 1355 (9th Cir. 1995) ..... 8

*Woodford v. Visciotti*
537 U.S. 19 (2002) (per curiam) ..... 3

**Statutes**

California Penal Code
    § 186.22(a) ..... 2
    § 186.22(b)(1) ..... 1, 2
    § 187(a) ..... 2
    § 211 ..... 2
    § 217.1(b) ..... 2, 8
    § 245(d)(1) ..... 2
    § 417.8 ..... 1, 2
    § 664 ..... 2
    § 667.5(b) ..... 2
    § 1170.12(c)(1) ..... 2
    § 12021(a)(1) ..... 1, 2
    § 12022.53(b) ..... 1, 2

28 U.S.C.
    § 2254 ..... 1

**TABLE OF AUTHORITIES  (continued)**

**Page**

§ 2254(d)(1)     3

**Other Authorities**

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)     3